Keasler, J., delivered the opinion of the Court, in which Keller, P.J., and Hervey, Richardson, Yeary, Keel, and Walker, JJ., joined.
Roderick Beham posted several pictures on Facebook in which he appears to "hold[ ] himself out as" a gang member.[1] These pictures were shown in a punishment hearing as evidence of Beham's character, and a law-enforcement expert on gang activity was called to explain their meaning and significance. The court of appeals held that this testimony was irrelevant and reversed Beham's sentence. Because we think that the testimony was "relevant to sentencing,"[2] we reverse the court of appeals.
I. FACTS
A. Trial and Retrial
A Bowie County jury found appellant Roderick Beham guilty of aggravated robbery for robbing a hotel clerk on the night of December 22, 2013. He was initially sentenced to twenty-five years in prison, but that sentence was reversed.[3] A second trial was held as to punishment only. In this resentencing proceeding, the State *477 presented five photographs taken from Beham's "Facebook" profile.[4] In each of these photographs, Beham is displaying what appear to be gang-related hand signs. In several of the pictures Beham is wearing red clothing and accessories. One picture has the phrase, "Money, Power, Respect," prominently featured in a large, Gothic font. Another shows Beham posing with stacks of money and individually packaged bags of marijuana. Yet another shows Beham posing next to a car with two other men, while Beham is pointing a gun at the camera.
To explain the significance of these photographs, the State called Shane Kirkland, an experienced detective specializing in gang activity. Beham had filed a motion in limine requesting a hearing before the State presented any gang-related evidence. So, when Kirkland was called, a hearing was held in which Kirkland summarized what he intended to testify to: that, based on his law-enforcement experience, Beham was "holding himself out to be" a member of a criminal street gang. Beham objected to this testimony, but he was overruled. The trial judge specified that Kirkland's testimony would be admissible only insofar as it went to Beham's "character."[5] The trial judge therefore allowed the testimony "as long as ... the [S]tate does not attempt to argue that the defendant is in a gang[.]"
Kirkland began by testifying to some of the "indicators" that he looks for in determining a person's gang status. He testified that gangs are often involved in a litany of crimes such as aggravated robbery, drug sales, thefts, and assaults "on rival gangs ... or just people in general." Kirkland was then shown the photographs taken from Beham's Facebook profile and, picture-by-picture, developed his opinion that the person shown in the photographs was "holding himself out as" a gang member. He based this opinion off of Beham's hand signs, the presence of a weapon and narcotics, the phrase "Money, Power, Respect," and the prevalence of the color red, "which is a big indicator of a gang unit affiliation." Kirkland frankly admitted that he had never met Beham, that he had no knowledge of Beham's involvement in any particular gang, and that he did not have a "file" on him. At the conclusion of the case, the jury sentenced Beham to forty years in prison.
B. Appeal and Discretionary Review
The Sixth Court of Appeals reversed Beham's sentence, holding that Kirkland's testimony was not relevant to the jury's determination of proper punishment.[6] Citing our plurality opinion in Beasley v. State , the court of appeals faulted the State for failing to show with any particularity which gang Beham was holding himself out to be a member of.[7] The court of *478 appeals also noted that "there was no evidence presented of the character and reputation" of the gang Beham allegedly sought to emulate.[8] The court of appeals ultimately held that, because of these gaps in the State's "gang-related evidence," the trial court abused its discretion in admitting it.[9]
We granted the State's petition to decide whether the trial court erred in admitting opinion testimony that Beham was holding himself out as a gang member, and if so, whether the admission was harmful. We hold that the admission was not an abuse of discretion, and so we do not address the issue of harm.
II. LAW
Trial court decisions to admit or exclude evidence will not be reversed absent an abuse of discretion.[10] Under this standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the "zone of reasonable disagreement."[11]
We deal today with an issue of relevance. Under Rule of Evidence 401, evidence is relevant if it has any tendency to make a "fact ... of consequence" more or less probable than it would be without the evidence.[12] We have described the trial court's role in determining relevance as a threshold matter in this way:
Determining the relevance of any given item of evidence to any given lawsuit is not exclusively a function of rule and logic. The trial court must rely in large part upon its own observations and experiences of the world, as exemplary of common observation and experience, and reason from there in deciding whether proffered evidence has "any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." The determination of relevance, vel non , thus depends upon one judge's perception of common experience. The process cannot be wholly objectified.[13]
These observations ring particularly true in the punishment context, where "there are no distinct 'facts ... of consequence' that proffered evidence can be said to make more or less likely to exist."[14] Inevitably, "[d]eciding what punishment to assess is a normative process, not intrinsically factbound."[15]
Nevertheless, the Rule-401 concept of relevance has been incorporated into Article 37.07, Section 3(a) of the Code of Criminal Procedure, which "governs the admissibility of evidence during the punishment stage of a non-capital criminal trial."[16] Under that provision, "evidence may be offered" in the punishment stage of trial "as *479 to any matter the court deems relevant to sentencing[.]"[17] The statute goes on to give a non-exhaustive list of some of the things a trial court might legitimately deem "relevant to sentencing"-including, but not limited to, the defendant's reputation and character.[18] Generalizing, we have said that evidence is "relevant to sentencing," within the meaning of the statute, if it is "helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case."[19]
Of course, neither the statute's demonstrative list nor any general formula could fully describe the universe of evidence that might plausibly be considered "relevant to sentencing."[20] Gang affiliation is a good example of this conundrum. Suppose, as in this case, the State presents evidence that street gang "ABC" regularly engages in criminal activities X, Y, and Z. In isolation, this evidence is not helpful to the jury in "determining the appropriate sentence for a particular defendant in a particular case."[21] Without the proper context-the defendant is an active member of "ABC"-the evidence does not affect the jury's normative response to the defendant in any way. It speaks only to the activities of a seemingly unrelated assortment of criminals; it is a punitive non sequitur. If, on the other hand, the State presents evidence that the defendant is an active member of a gang that goes by the name "ABC" without any indication of the kinds of activities "ABC" actually engages in, the evidence is likewise unhelpful and irrelevant, and may even be constitutionally odious.[22] And yet, the confluence of these two facts-evidence that the defendant is an active member of a gang that regularly engages in criminal activities-is almost always relevant for sentencing purposes.[23]
Beasley does not hold otherwise. Even if it did, as a plurality opinion construing an iteration of Article 37.07 that was more narrowly drafted than the present law,[24] Beasley is not binding authority. Where, then, should we look for guidance on this issue?
We must begin by recalling that, even in the punishment phase, relevancy "often occur[s] in chains-one fact proves another fact, which proves a third fact, etc."[25] To remain relevant, this process should culminate in some minimal support for, or against, a fact "of consequence" to proper punishment.[26] But the fact that an isolated item of evidence does not have a direct impact on the jury's normative response to the defendant does not necessarily make it irrelevant to sentencing. Even *480 in punishment, a brick need not be a wall.[27]
With this very idea in mind, in Mendiola v. State , then-Judge Keller argued that we ought to think of punishment-phase facts as existing in two separate categories: normative facts and subsidiary facts.[28] Normative facts are those that directly impact "the factfinder's normative response to the defendant."[29] An example of this is evidence that, beyond a reasonable doubt, the defendant previously committed an extraneous criminal offense.[30] This is a basis upon which a jury could legitimately form a clearer opinion as to the proper punishment for the defendant's conduct. Normative facts can therefore be thought of as "fact[s] of consequence" in the punishment context.[31] Subsidiary facts are those "that do not by themselves impact a factfinder's normative response to the defendant," but are relevant insofar as they assist in "proving or disproving a normative fact."[32] If the normative fact at issue is the commission or non-commission of an extraneous offense, some examples of subsidiary facts might be eyewitness testimony pertaining to the offense, an alibi, or evidence affecting a witness's credibility.[33]
The advantage of this scheme is that it provides clarity to the reviewing court about what kinds of considerations should inform its relevancy-to-sentencing analyses. Whether a normative fact is admissible "turns upon policy;"[34] that is, it depends upon the bounds placed either by the Legislature or by the Constitution on the kinds of things a jury may properly take into account when sentencing the defendant.[35] Within these policy-defined bounds, the trial court has wide discretion to deem virtually any matter relevant to a proper sentence.[36] It abuses this discretion only when the reviewing court "can say with confidence that by no reasonable perception of common experience" does the proffered evidence inform a legitimate area of normative inquiry.[37] On the other hand, whether a particular subsidiary fact is relevant is "a question purely of logical relevancy," for which Rule 401 is the appropriate guide.[38] To determine whether a subsidiary fact is relevant, a reviewing court need only ask whether "it has any tendency to make more or less probable the existence of a normative fact" properly *481 at issue in the case.[39] This is a familiar standard of review.
We do not hold that reviewing courts should always designate discrete facts as being either "normative" or "subsidiary" in deciding relevancy issues at sentencing.[40] But, in the present case, we do find this framework to be clarifying. We turn now to its application.
III. ANALYSIS
In this case, Kirkland testified in two broad categories: First, he testified generally as to the kinds of indicators of gang membership that he typically looks for, and also as to some of the illegal activities that criminal street gangs commonly engage in. Second, he testified specifically as to his opinion that, based solely on his impression of the Facebook photographs, Beham was "holding himself out" as a gang member. We assume, without deciding, that Beham preserved a relevance objection as to each of these categories of testimony, and we address each category in turn.
A. General Matters: "Indicators" and Criminal Activities
Kirkland testified that various factors inform his determination of whether he considers a person to be gang-affiliated. These indicators include "what that person does," how he dresses, his preferred color schemes, any criminal activity, who his "known associates" are, the person's social media presence, whether the person carries a weapon, how they "get their money," and whether that person displays gang signs. Kirkland also testified that, as for the kinds of gangs that are associated with these indicators, they are "usually" involved in "a very long list" of criminal activities. By Kirkland's account, these activities include "aggravated ... robberies, drug sales, drug trafficking, thefts, assaults on rival gangs or aggravated assault on rival gang members or just people in general."
Insofar as, in this portion of his testimony, Kirkland is describing generic factors that might apply to any potential subject of investigation, this evidence cannot be said to directly affect the jury's normative response to Beham. This testimony does not yet concern or address Beham, so it is best understood as "subsidiary" evidence. It is relevant to the extent that it makes a legitimate normative fact more or less likely.
If we assume that whether Beham was holding himself out as a gang member is a legitimate area of normative inquiry (an issue we will address below), we must conclude that the trial court did not abuse its discretion in admitting this portion of Kirkland's testimony. Knowing that these factors are commonly associated with gang membership, the factfinder could rationally conclude that one who wilfully displays these indicators on his social media profile is more likely-if only by a "brick"-to be holding himself out as a gang member.[41] Furthermore, knowing that the kinds of gangs who display these characteristics are often involved in violent and felonious conduct makes the normative impact of this evidence incrementally greater. That is enough to satisfy the relevance standard, at least for this subsidiary material.
*482 It might be objected that this evidence was not helpful to the jury in determining an appropriate sentence because it did not conclusively establish that one who exhibits these characteristics is a member of a criminal gang or is even necessarily "holding himself out" as one. For example, as Beham argued at trial, many non-gang-affiliated people dress in red clothing. Many non-gang-affiliated people carry weapons. Many non-gang-affiliated people display gang-related hand signs in an unfortunate attempt to appear "cool," to be trendy, to fit in-and perhaps without any knowledge of what these symbols actually mean. In short, a person might engage in any or all of these activities without a conscious desire to hold himself out as a gang member.
But this objection goes to the weight of the proffered evidence, and not its admissibility. To meet the threshold requirement of relevance, evidence need only have a tendency to make the ultimate fact more or less likely than it would be without; it need not prove the point by itself.[42] If the evidence is inconclusive or subject to multiple interpretations, the opponent should be given every opportunity to rebut the negative inference with counter-evidence. We note that, both in cross-examining Kirkland and in closing argument, Beham's counsel made effective points as to the wisdom of judging "a whole man's life based off of [some] pictures you find on Facebook." The opponent may also object, as Beham did, that the probative value of the evidence is outweighed by the risk of unfair prejudice,[43] and the trial judge should take this objection into careful consideration. However, it would be incorrect to say that, because the evidence fails to conclusively prove that Beham is holding himself out to be a member of a gang, it is utterly irrelevant.
B. Specific Matters: Holding Oneself Out to be a Gang Member
Of course, this conclusion depends on the premise that evidence of a person's "holding himself out" to be a gang member is relevant to his character. This was the thrust of the second broad category of Kirkland's testimony: that, through his Facebook pictures, Beham intended to identify himself as a member of a criminal gang. Because this evidence might arguably have a direct effect on the jury's normative response to Beham, it is best understood as normative evidence.[44] The question, then, is whether the trial judge abused his discretion in considering evidence that Beham held himself out as a gang member to be normatively relevant as character evidence.
We do not think he did. The trial judge's "own observations and experiences of the world" might reasonably lead him to the conclusion that, if a person glorifies a certain lifestyle, he is likelier to want to participate in that lifestyle.[45] In this light, the evidence is not bereft of relevance merely because Kirkland failed to identify a particular gang that Beham admired.[46] The normative impact of this kind of evidence comes not in the form of the arbitrary label the gang attaches to itself, but rather in the kinds of gang-related activities the defendant thinks worthy of praise and emulation. In this regard, we note Kirkland's testimony that aggravated robbery, the offense *483 of which Beham was convicted in this case, is commonly associated with the kinds of criminal street gangs Beham was mimicking.
The trial judge might also conclude, within the zone of reasonable disagreement, that how a person portrays himself within his own social circles gives at least some useful indication of what his values are. This will, of course, not always be true. Those who portray themselves as loving and devoted husbands, wives, fathers, mothers, etc. , are often anything but. But here again, the evidence is not without normative relevance simply because it fails to conclusively prove that Beham has a particular character flaw. There is not, as opposed to unadjudicated extraneous offenses, a quantum of proof that must be met with respect to a person's character before it may be considered by the jury in reaching a just punishment.[47] The only standard in this area is that of relevance: Does this character evidence contribute, even incrementally, to the jury's legitimate normative response to the defendant? A trial judge might reasonably conclude that the fact that a person idolizes a violent gang lifestyle meets this test, even if the evidence fails to show that he is a member of any specific gang.
There is certainly a concern that, by offering evidence that Beham was holding himself out as a gang member, the State was inviting the jury to punish him more harshly because he holds a particular belief-that the gang lifestyle is one deserving of approval or praise. Displeasing as this belief might be, an invitation to punish someone for their abstract beliefs may be constitutionally objectionable, even when the belief at issue is "morally reprehensible."[48]
But we perceive a distinction between (1) actively promoting the gang lifestyle and depicting oneself as a participant in it, and (2) merely "holding," in a more abstract sense, the belief that gang membership is laudable.[49] The former might reasonably be considered more probative than the latter, not only as to character, but also as a predictor of one's proclivity to commit future criminal acts. This is especially true when, as here, the defendant is being sentenced for a violent, aggravated felony and his depictions of gang membership emphasize its most violent and criminal aspects.[50] Beham, after all, willingly displayed photographs of himself posing with drugs and pointing a handgun at the camera. Testimony that these materials appeared in context to be celebratory of the gang lifestyle, or at least gang-related, allowed the jury to better understand Beham's *484 decision to promote them. It was, for that reason, normatively relevant to the jury's determination of a proper punishment for Beham's crime of aggravated robbery.
CONCLUSION
It is still the law that when the State intends to put on evidence of a defendant's membership in an organization or group, it must make some showing of the group's violent or illegal activities for the evidence to remain relevant to sentencing.[51] This opinion should not be understood to undermine this principle. We hold only that evidence that a person portrays himself as a member of a criminal association may, in some cases, be relevant to the person's character in sentencing even if the State cannot show that he is actually a member of any such association. Because we find that the trial court did not abuse its discretion in deeming Detective Kirkland's testimony relevant to sentencing, we reverse the court of appeals' judgment and remand the case for that court to address Beham's remaining points of error.
Alcala and Newell, JJ., concurred.

See State's Petition for Discretionary Review at 2.

See Tex. Code Crim. Proc. art. 37.07, § 3(a)(1).

Beham v. State , 476 S.W.3d 724, 735-742 (Tex. App.-Texarkana 2015, no pet.) (testimony that Beham had "at least four contacts" with out-of-state law enforcement agencies was more prejudicial than probative in determining proper punishment).

See, e.g. , Tienda v. State , 358 S.W.3d 633, 634 n.3 (Tex. Crim. App. 2012) ("Social networking websites such as ... Facebook typically allow users to customize their own personal web pages (often known as 'profiles'), post photographs or videos, add music, or write a journal or blog that is published to the online world.") (internal quotation marks omitted) (quoting John S. Wilson, Comment, MySpace, Your Space, or Our Space? New Frontiers in Electronic Evidence , 86 Or. L. Rev. 1201, 1220 (2007) ).

See Tex. R. Evid. 105(a) ("If the court admits evidence that is admissible against a party or for a purpose-but not against another party or for another purpose-the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

Beham v. State , No. 06-16-00094-CR, 2017 WL 3205531 (Tex. App.-Texarkana May 19, 2017) (mem. op., not designated for publication).

Id. at *4 (citing Beasley v. State , 902 S.W.2d 452, 457 (Tex. Crim. App. 1995) (plurality op.) ).

Id.

Id.

E.g. , Martinez v. State , 327 S.W.3d 727, 736 (Tex. Crim. App. 2010) (citing Green v. State , 934 S.W.2d 92, 104 (Tex. Crim. App. 1996) ).

See McGee v. State , 233 S.W.3d 315, 318 (Tex. Crim. App. 2007) (citing Montgomery v. State , 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g) ).

Tex. R. Evid. 401.

Montgomery , 810 S.W.2d at 391 (op. on. reh'g) (citations omitted).

See Ellison v. State , 201 S.W.3d 714, 718-19 (Tex. Crim. App. 2006) (citing Rogers v. State , 991 S.W.2d 263, 265 (Tex. Crim. App. 1999) ).

Murphy v. State , 777 S.W.2d 44, 63 (Tex. Crim. App. 1988) (plurality op. on reh'g).

McGee , 233 S.W.3d at 318 (citing Erazo v. State , 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) ).

Tex. Code Crim. Proc. art. 37.07, § 3(a)(1).

Id.

McGee , 233 S.W.3d at 318 (quoting Rodriguez v. State , 203 S.W.3d 837, 842 (Tex. Crim. App. 2006) ).

Tex. Code Crim. Proc. art. 37.07, § 3(a)(1).

McGee , 233 S.W.3d at 318 (quoting Rodriguez , 203 S.W.3d at 842 ).

See Dawson v. Delaware , 503 U.S. 159, 165-67, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992).

Cf. Beasley , 902 S.W.2d at 457.

See Ellison , 201 S.W.3d at 720-21 (summarizing the amendment process Tex. Code Crim. Proc. art. 37.07 has undergone over the years).

See Mendiola v. State , 21 S.W.3d 282, 286 (Tex. Crim. App. 2000) (Keller, J., dissenting).

Rogers , 991 S.W.2d at 265 (citing Tex. R. Evid. 401 ; Miller-El v. State , 782 S.W.2d 892, 895-96 (Tex. Crim. App. 1990) ).

Cf. 1 Kenneth S. Brown et al. , McCormick on Evidence § 195, at 999-1000 (7th ed. 2013) ("An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered.... A brick is not a wall.").

Mendiola , 21 S.W.3d at 285-86 (Keller, J., dissenting).

Id.

See Tex. Code Crim. Proc. art. 37.07, § 3(a)(1).

Mendiola , 21 S.W.3d at 286 (Keller, J., dissenting).

Id. at 285-86.

Id.case-ids="11519174" index="35" url="https://cite.case.law/sw3d/21/282/#p286"> at 286.

Id.

See, e.g. , Tex. Code Crim. Proc. art. 37.07, § 3(a)(2) ("[E]vidence may not be offered by the state to establish that the race or ethnicity of the defendant makes it likely that [he] will engage in future criminal conduct."); Dawson , 503 U.S. at 167, 112 S.Ct. 1093 (evidence that the defendant holds a "morally reprehensible" belief is not per se relevant character evidence in a sentencing proceeding).

But see Ellison , 201 S.W.3d at 722 (trial court's decision to admit punishment-phase evidence is also subject to Tex R. Evid. 403 ).

Cf. Montgomery , 810 S.W.2d at 391.

Mendiola, 21 S.W.3d at 286 (Keller, J., dissenting).

Id.

See Mendiola , 21 S.W.3d at 285 n.2 ("Requiring attorneys to first determine the type of fact they are attempting to admit into evidence before deciding the appropriate relevancy standard [would] ... unnecessarily complicate relevancy rulings[.]").

See supra note 27.

See id.

See Ellison , 201 S.W.3d at 722 (trial court's decision to admit punishment-phase evidence is subject to Tex R. Evid. 403 ).

See Mendiola , 21 S.W.3d at 285-86 (Keller, J., dissenting).

Cf. Montgomery , 810 S.W.2d 372 at 391.

Contra Beham , 2017 WL 3205531, at *4.

Cf. Huizar v. State , 12 S.W.3d 479, 482 (Tex. Crim. App. 2000) ("Article 37.07's requirement that extraneous-offense and bad-act evidence must be proven beyond a reasonable doubt is an evidentiary rule; it has no constitutional underpinnings.") (citations omitted).

Dawson , 503 U.S. at 166-67, 112 S.Ct. 1093.

Compare id. at 164 ("We have previously upheld the consideration, in a capital sentencing proceeding, of evidence of racial intolerance and subversive advocacy where such evidence was relevant to the issues involved."), with ids="6223309" index="52" url="https://cite.case.law/us/503/159/#p165">id. at 168, 112 S.Ct. 1093 (the First Amendment prevents a state from "employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried").

Cf. Davis v. State , 329 S.W.3d 798, 805 (Tex. Crim. App. 2010) ("[T]he Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs ... at sentencing merely because those beliefs ... are protected by the First Amendment. Such evidence may be admissible if it is shown to be relevant to the issues involved in the case.") (citations omitted).

E.g. , Davis , 329 S.W.3d at 805 (citing Mason v. State , 905 S.W.2d 570, 577 (Tex.Crim.App. 1995) ; Dawson , 503 U.S. at 163-67, 112 S.Ct. 1093 ).