

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00201-CR
No. 02-21-00202-CR

———————————————

DOMINIQUE A. SMITH, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 5
Tarrant County, Texas
Trial Court Nos. 1609086, 1609087

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

A jury convicted Appellant Dominique A. Smith of the offenses of assault and unlawful restraint for acts committed against Complainant, his fiancée, with the two offenses alleged in separate cause numbers. *See generally* Tex. Penal Code Ann. §§ 20.02(c), 22.01(a)(1). The trial court also made an affirmative finding of family violence in both causes. In accordance with the parties' agreement as to punishment, the trial court assessed Appellant's punishment at 275 days in the Tarrant County Jail for each offense and ordered the sentences to run concurrently. The trial court suspended the sentences and placed Appellant on community supervision for twenty-four months. Appellant filed notices of appeal in both cause numbers.

In a single issue, Appellant complains that the trial court erred by overruling objections to questions directed to a detective who investigated the offenses. Appellant argues that the detective improperly speculated by stating that bruises shown in a photo of Complainant's arm looked like they were made by someone's fingers. The trial court did not abuse its discretion by overruling the objections. The testimony that the detective actually offered was that part of his investigation was to determine whether the photo bore out Complainant's rendition of what had occurred, and in his opinion, the photo was consistent with that rendition. The detective's opinion was admissible as a lay opinion under Texas Rule of Evidence 701. Accordingly, we affirm the trial court's judgments.

## II. Factual Background

Complainant and Appellant had a long-term relationship and had two children together. The episode that formed the basis of the charges against Appellant began when Complainant sought to end their relationship and an argument ensued over the phone about various conflicts in their relationship. The conflict escalated when Appellant announced that he was coming to Complainant's apartment, and she asked him not to do so. When Appellant arrived, he was angered when Complainant would not let him inside her apartment.

Complainant recounted that on the morning after the argument while she was in the parking lot of the apartment complex preparing to take her children to school, Appellant materialized and dragged Complainant upstairs to her apartment. Complainant testified that once in the apartment, Appellant physically attacked her. Complainant chronicled how Appellant had cut her finger when he had grabbed her keys from her hand, had picked her up by her upper arms and had thrown her onto a bed, and had eventually choked her. While he was choking her, Appellant allegedly had sex with Complainant.

Eventually, Appellant allowed Complainant to leave the apartment and go to work. Complainant acknowledged that she had spent time with Appellant in the days after the episode but claimed that she did so because of fear of the consequences to Appellant if she revealed what had happened and the fear of having to acknowledge to herself the type of person whom she had gotten into a relationship with. But when

3

Appellant left the apartment to retrieve additional clothes, Complainant decided to go to the police station to file a police report and to the courthouse to obtain an emergency protective order.

While at the police station, an officer took photos of Complainant that depicted her injuries, including pictures of her upper arm where she claimed that Appellant had grabbed her. On cross-examination, Appellant's counsel challenged whether the pictures actually showed the injuries that Complainant claimed that she had sustained, including whether the photos of her upper arm showed bruising. Witnesses who saw Complainant when she arrived at work on the day she claimed that she was assaulted testified that they had seen the bruises on Complainant's upper arms as depicted in the pictures.

A photo of Complainant's upper arms was also referenced during the testimony of a detective who had investigated Complainant's report of abuse. The officer in question testified that he had been a detective in the domestic crimes unit of the Arlington Police Department for three of the fourteen years that he had been employed by the department. Combining his training in the police academy with that he received while in the domestic crimes unit, the detective had more than eighty hours of training involving domestic crimes.

During the detective's tenure in the domestic crimes unit, he had investigated hundreds of cases. He explained that the investigative process requires a detective to review a complainant's statement that was taken by an investigating officer and to

review any photos taken by the officer and to compare that information with what he is told when he interviews a complainant. The detective described this investigative process as follows:

> So when I talk to the victim, of course, what I want to keep in mind is that, you know, how does the statement that I'm given by the victim when I'm talking to [her] compare to the original statement that [she] g[a]ve the officers. How [do her] statements . . . correlat[e] to the pictures that were taken [versus] what [she] said had happened.

The detective followed his usual investigative process while investigating Complainant's police report, and as part of the process, he reviewed the photos that were taken when she made that report. The detective was shown one of the photos, which depicted Complainant with her left arm raised. The detective's testimony regarding the conclusions that he had drawn from the picture prompted objections that the detective was speculating. Specifically, the following occurred during the detective's direct testimony:

> Q. And I want to direct your attention specifically to State's Exhibit No. 7. Tell us a little bit about this photo.
>
> A. Okay. When I look at this photo, what I see is [Complainant's] left arm where she has it raised.
>
> Q. Okay.
>
> A. And there's three bruises, three small bruises that resemble that --
>
> [Defense counsel]: Your Honor, excuse me, Your Honor, I'm going to object to him speculating to what he thinks those bruises are.

5

THE COURT: Overruled.

Q. [Prosecutor]: Go ahead, Detective.

A. There are three dark spots which resemble bruises and what looks like, in my experience, are quite possibly from fingers because they are small and round like from fingertips.

[Defense counsel]: Again, Your Honor, I object to the comment, the last comment about what he thinks those three marks are.

THE COURT: Overruled.

Q. [Prosecutor]: Detective, would it be fair to say as you look at those photos, you were using your previous three years of experience and the hundreds of cases that you [had] looked at to see if those photos matched up with what you were hearing from [Complainant]?

A. Yes, sir.

Q. Had you seen photos like this in the course of your [other] investigation[s]?

A. I have.

Q. Not unusual or uncommon?

A. No.

## III. Analysis

### A. We set forth the standard of review.

"We review a trial court's decision to admit evidence for an abuse of discretion." *Wright v. State*, 618 S.W.3d 887, 890 (Tex. App.—Fort Worth 2021, no pet.) (citing *Colone v. State*, 573 S.W.3d 249, 263–64 (Tex. Crim. App. 2019)). "Under this standard, the trial court's decision to admit evidence will be upheld as long as it

6

[is] within the zone of reasonable disagreement." *Id.* (citing *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018)). If any theory of law supports the trial court's decision, we will not disturb that decision. *Id.* (citing *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016)).

**B.      The trial court did not abuse its discretion by permitting the detective to give a lay opinion that the bruises on Complainant's arm were consistent with her rendition of the events as an abuse victim.**

Appellant argues that the trial court erred by permitting the detective "to testify that the three dark spots/bruises depicted in State's Exhibit No. 7 'are quite possibly from fingers because they are small and round like from fingertips.'" Appellant contends that by permitting the testimony, the trial court allowed the detective to invade the province of the jury and to draw inferences on the jury's behalf that it was capable of drawing on its own. But Appellant's argument mischaracterizes the detective's opinion. The detective was not merely telling the jury that the picture showed bruises; instead, part of his investigation was to determine whether the photos bore out Complainant's rendition of the facts, and in his opinion, they did so. Appellant's argument ignores a host of opinions upholding trial courts' rulings permitting investigating officers to offer testimony similar to that offered by the detective as a lay opinion under Texas Rule of Evidence 701.

Rule 701 provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is[] (a) rationally based on the witness's

perception[] and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." Tex. R. Evid. 701. The Court of Criminal Appeals has set the following parameters for an opinion to fall within Rule 701:

> Perceptions refer to a witness's interpretation of information acquired through his or her own senses or experiences at the time of the event. Thus, the witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations. An opinion is rationally based on perception if it is one that a reasonable person could draw under the circumstances. There is no bright[-]line rule indicating when an opinion is helpful, but we have said that general evidentiary concerns, such as relevance and . . . Rule 403's balancing test, aid the determination.

*Wade v. State*, No. PD-0157-20, 2022 WL 1021056, at *8 (Tex. Crim. App. Apr. 6, 2022) (footnotes omitted). *Wade* held that a defendant could offer a lay opinion that his injury to a victim did not constitute serious permanent disfigurement because that "opinion was rationally based on his observations of the injury, both as it was inflicted and as the healed injury appeared at the time of trial." *Id.* at *9.

Here, the detective's testimony was rationally based on what he perceived, i.e., the bruises depicted in the photo of Complainant's arm and whether the presence of those marks in his experience "matched up" with a domestic-abuse complainant's rendition of events. A host of courts of appeals have upheld trial court rulings allowing police officers to testify, based on their experience, regarding what had made physical marks on a body or what those marks indicated. *See Davis v. State*, 313 S.W.3d 317, 349 (Tex. Crim. App. 2010) (holding that trial court did not abuse its discretion by permitting officer to testify that stab wounds on dead cat appeared to be inflicted

8

by the same type of knife blade that was used to murder victim); *Sowell v. State*, No. 13-20-00250-CR, 2021 WL 3196520, at *3 (Tex. App.—Corpus Christi–Edinburg July 29, 2021, no pet.) (mem. op., not designated for publication) ("[Detective's] extensive history in dealing with strangulation cases allowed him to identify marks on [victim's] neck, that she had vomited, and that she [had] urinated, as indicators that strangulation had occurred."); *Tobar v. State*, Nos. 14-15-00011-CR, 14-15-00012-CR, 2016 WL 2975568, at *6–7 (Tex. App.—Houston [14th Dist.] May 19, 2016, no pet.) (mem. op., not designated for publication) (concluding that police officer's testimony—that "[b]usted lips typically occur after an impact, not during a wrestling match"—was admissible as lay-opinion testimony under Rule 701 because the officer's testimony was rationally based on his firsthand perceptions of the victim's injuries); *Hawkins v. State*, No. 06-08-00087-CR, 2009 WL 30255, at *4 (Tex. App.—Texarkana Jan. 7, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by permitting officer to testify that wounds on victim were defensive in nature); *Hollis v. State*, 219 S.W.3d 446, 467–68 (Tex. App.—Austin 2007, no pet.) (holding that peace officer's testimony—that defendant had blisters and discolorations on his hands indicating methamphetamine exposure—was admissible under Rule 701); *Jackson v. State*, No. 08-01-00090-CR, 2002 WL 1874857, at *10 (Tex. App.—El Paso Aug. 15, 2002, pet. ref'd) (not designated for publication) (holding that trial court did not abuse its discretion by permitting officer to testify that stab wounds on appellant were superficial); *Kidd v. State*, No. 01-00-

9

00869-CR, 2001 WL 301374, at *2 (Tex. App.—Houston [1st Dist.] Mar. 29, 2001, no pet.) (not designated for publication) (holding that trial court did not abuse its discretion by permitting officer to testify about which bruises on victim were older and which were newer); *see also In re J.C.*, 892 S.W.2d 87, 88–89 (Tex. App.—El Paso 1995, no writ) (holding that trial court did not abuse its discretion by determining that testimony of lay person—that bruises appeared to be one day old—was admissible because witness had recent personal experience with bruising).

In a slightly different vein, our court and another have upheld trial court rulings permitting an officer (1) to give a lay opinion that the injuries the officer had observed were tied to the conduct of a defendant or (2) to state the cause of the injuries. *See James v. State*, 335 S.W.3d 719, 725–26 (Tex. App.—Fort Worth 2011, no pet.) (holding that trial court did not abuse its discretion by permitting officer to testify that it appeared that complainant's boyfriend had "beat the crap" out of her); *see also Murray v. State*, No. 03-09-00541-CR, 2011 WL 2162864, at *6 (Tex. App.—Austin June 1, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by permitting investigator to offer a lay opinion that the injuries he saw on the body indicated that the child had been beaten). Here, the detective did not go as far as the cited examples when he opined that the photo and Complainant's rendition of the events were consistent and when he testified that it was part of his investigative process to determine whether the evidence of injuries and the story told by a complainant were consistent.

Further, the detective's opinion falls in the realm of a lay opinion because it was predicated on his experience, not a scientific theory. The Texarkana Court of Appeals has explained the demarcation between an experiential-based lay opinion and an expert opinion that relies on specialized training:

> A distinct line cannot be drawn between lay opinion and expert testimony because all perceptions are evaluated based on experiences. However, as a general rule, observations [that] do not require significant expertise to interpret and [that] are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience or training. Additionally, even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert. The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge.

*Hawkins*, 2009 WL 30255, at *4. The detective applied his experience to formulate an opinion: the marks on Complainant's arm were consistent with Complainant's rendition of events as an abuse victim. In formulating his opinion, the detective drew on the experience that he had gleaned from investigating hundreds of domestic crimes, not on a scientific theory.

The final question is whether the detective's opinion was "helpful to clearly understanding the witness's testimony or to determining a fact in issue." *See* Tex. R. Evid. 701(b). Appellant focuses his argument on this question, contending that the jury could decide for itself whether the bruises on Complainant's arm were made by fingertips. As we have noted, in making this argument, Appellant unreasonably narrows the scope of the detective's opinion; his opinion went beyond the simple

11

question of what had made the bruises. Instead, his opinion turned on how the injuries depicted in the picture impacted the question that was the focus of his investigation—whether the photos bore out Complainant's rendition of what had occurred. Appellant does not argue that the detective's opinion would not aid the jury.

Because the detective's opinion was admissible as a lay opinion, the trial court did not abuse its discretion by overruling Appellant's speculation objections and admitting the detective's lay-opinion testimony. We overrule Appellant's sole issue.

## IV. Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgments.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 28, 2022