**AFFIRMED and Opinion Filed May 16, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00964-CR**

**DONNIE CHRISTOPHER JOHNSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1671543**

# MEMORANDUM OPINION

Before Justices Reichek, Goldstein, and Kennedy[1]
Opinion by Justice Goldstein

Appellant Donnie Christopher Johnson appeals the trial court's judgment adjudicating guilt for assault–family violence. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A). In his sole issue, appellant contends that the trial court erred by admitting hearsay evidence. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.2(b).

---

[1] The Honorable Justice David J. Schenck was originally a member of this panel. The Honorable Justice Kennedy succeeded Justice Schenck when his term expired on December 31, 2022. Justice Kennedy has reviewed the briefs and the record.

# BACKGROUND

On November 2, 2016, appellant was indicted on charges of assault–family violence against his niece. The indictment contained an enhancement paragraph alleging a prior felony conviction for felony assault. Pursuant to a plea agreement with the State, appellant pleaded guilty to the charged offense. The trial court entered an order of deferred adjudication, placing appellant under community supervision for seven years. The terms of appellant's community supervision included the following:

(a) Commit no offense against the laws of this or any other State or the United States, and do not possess a firearm during the term of Supervision;

(b) Avoid injurious and vicious habits, and do not use marijuana, narcotics, dangerous drugs, inhalants or prescription medication without first obtaining a prescription for said substances from a licensed physician;

(c) Avoid persons or places of disreputable or harmful character and do not associate with individuals who commit offenses against the laws of this State or the United States;

(d) Obey all rules and regulations of the Supervision Department, and report in the manner and time as directed by the Judge or Supervision Officer, to-wit: Monthly, Twice Monthly or Weekly[;]

. . . .

(n) Submit a non-diluted random urine sample and/or medical test/breathalyzer test at the request of the Supervision Officer to determine the use of illicit drugs or alcohol, paying the total cost of such urinalysis of $200.00 payable at $10.00 monthly to the Community Supervision and Corrections Department;

. . . .

–2–

(p) Do not possess, consume or purchase any alcoholic beverages, or illegal controlled substances during the term of Supervision;

. . . .

(r) Within 30 days from referral, participate in an anger management program through a court-approved resource, making an observable deliberate and diligent effort to comply with all directives provided by the program until released successfully by the agency or the Court. Defendant to pay all costs of counselling/treatment;

. . . .

(t) Within 30 days from referral, participate in intensive outpatient substance counseling through a court approved program and continue making observable deliberate and diligent effort to comply with all directives and instructions provided by said program or its staff, until released successfully by the agency or the Court. Defendant to pay all costs of counseling/treatment[.]

On November 1, 2017, the State filed a motion to revoke probation or proceed with an adjudication of guilt, which the State amended four times through the course of the proceedings below. In its final amended motion, the State alleged that appellant violated the above conditions of his community supervision as follows:

(A[1]) by possessing a firearm during the term of supervision;

(A[2]) by committing aggravated assault with a deadly weapon on or about March 20, 2021;

(A[3]) by committing aggravated assault with a deadly weapon on or about March 19, 2021;

(B[1]) by using cocaine as evidenced by a positive urine screen collected on or about May 31, 2019;

(B[2]) by using cocaine as evidenced by a positive urine screen collected on December 3, 2018;

(B[3]) by using opiates as evidenced by a positive urine screen collected on or about October 27, 2017;

(B[4]) by using PCP as evidenced by a positive urine screen collected on or about September 25, 2017;

(C) by failing to avoid persons and places of disreputable or harmful character;

(D) by failing to report to the Supervision Officer as directed for the months of February 2020–March 2021;

(N) by failing to submit a non-diluted urine sample and/or medical test/breathalyzer test as requested by the Supervision Officer on or about January 31, 2020;

(P) by possessing, consuming, or purchasing alcoholic beverages or illegal controlled substances during the term of the Supervision;

(R) by failing to participate in an anger management program through a court-approved resource, making an observable, deliberate, and diligent effort to comply with all directives provided by the program;

(T) by failing to participate in intensive outpatient ("IOP") substance counseling through a court-approved program; and

(2) by failing to report to the 194th Judicial District Court on January 31, 2020 at 1:30 p.m. for a supervision review with the judge; to wit: "the defendant left the court review when requested to submit to a urinalysis test[.]"

Appellant entered a plea of not true to the allegations.

On October 29, 2021, the trial court held a hearing on the State's amended motion. The first witness to testify was Theresa Howard, a Dallas County Probation Officer assigned to appellant's case. Howard testified that, according to appellant's case file, appellant failed to complete both the IOP counseling and anger management course. Howard also stated that, during the term of appellant's supervision, he tested positive for cocaine, opiates, and PCP on the dates alleged in the State's amended motion. Howard testified that on January 31, 2020, appellant

–4–

"exited the court review and he walked on the UA," (i.e., the urinalysis test) when requested. Howard said that the last time appellant reported to a probation officer was February 2020.

The State's second witness was Mikkel Weeks, another Dallas County Probation Officer. Weeks testified that he was the officer who told appellant that he had to take a urinalysis test on January 31, 2020. Weeks stated that appellant told him he did not need to use the restroom at that time. Weeks said that he told appellant to sit down in the gallery outside the courtroom. About halfway through the court review, he went to retrieve appellant, but appellant was not there. Weeks testified that he notified his supervisor that appellant did not appear for the urinalysis and did not appear before the judge.

The State next called Juan Mendoza, the field officer assigned to appellant's case. Mendoza testified that appellant was required to report to him on a monthly basis. Mendoza stated that appellant reported to him in October 2019 and November 2019. Mendoza stated that appellant did not report as required from February 2020 until the time of the hearing.

The State's next witness was Officer Vittor Grantham of the Dallas Police Department. Officer Grantham stated that he was assigned to the 911 call center at the City of Dallas. Officer Grantham testified that he received a 911 call from a person who identified herself as Cleo King. He testified that King's demeanor was "upset, kind of frustrated." The State then offered an audio recording of the 911 call

into evidence. Appellant's counsel objected as to hearsay, and the State responded that the call was excepted from the hearsay rule as an excited utterance. The trial court admitted the recording into evidence. In the recording, King stated: "my boyfriend just kicked in my door, beat me, pulled a gun on me, and left." When asked if she needed an ambulance, King stated that she was bleeding and she did not know if she needed stitches or not. When asked who assaulted her, King identified appellant by his full name.

The State finally called Officer Otilio Valdez Sanchez of the Dallas Police Department. Officer Sanchez testified that he and another police officer were dispatched to King's address at around 1:00 a.m. on March 20, 2021. Officer Sanchez stated that upon arriving, he noticed the door to King's residence was damaged. He said that when King came to the door, he noticed she had a gash above her eyebrow. Photographs of the damaged door and King's injury were admitted in evidence over no objection. After Officer Sanchez's testimony, the State rested.

Appellant testified in his own defense. Appellant acknowledged that he had to comply with certain terms of community supervision. Regarding the January 31, 2020 court review, appellant testified that he arrived at the courthouse with his grandchildren. He said that he left his grandchildren with someone while he went to the courtroom. He said that he asked someone at the courtroom if he could have his grandchildren stationed somewhere and was told no. Appellant testified that he left because there was no one to watch his grandchildren. Appellant testified that during

a later call with his probation officer, he was informed that a warrant had been issued for his arrest. He said that he tried turning himself in at the sheriff's office three weeks later, but they would not take him. When asked about the March 20 incident, appellant said he saw King that night but denied assaulting her. Appellant also denied owning or possessing a firearm. When asked about his IOP counseling, appellant stated that he could not complete it because he was told he had to finish his anger management course first. Appellant conceded that he had done drugs during the supervision period and requested that the Court reinstate his probation so he could continue with the IOP course.

After the close of evidence, the trial court announced its ruling on the record. Specifically, the trial court found that appellant had violated certain conditions of his community supervision and entered judgment adjudicating him guilty. This appeal followed.

## DISCUSSION

In his sole issue, appellant contends that the trial court erred in admitting the audio recording of King's 911 call into evidence over his hearsay objection. Appellant notes that the audio recording is the only evidence directly connecting him with the March 20, 2021 incident. He argues that the tape itself shows that King's statements were not an excited utterance because her demeanor was calm and there was no indication of how much time elapsed between the incident and the 911 call. The State responds that the evidence was sufficient for the trial court to conclude

King's statements were an excited utterance. Alternatively, the State argues that even if the trial court erred in admitting the 911 call, the error was harmless.

We review a trial court's evidentiary rulings for abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). A trial court abuses its discretion only when its decision was so clearly wrong as to lie outside the zone of reasonable agreement. *Id.*; *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). Additionally, the erroneous admission of evidence generally constitutes a non-constitutional error and is reviewed under Texas Rule of Appellate Procedure 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). Under Rule 44.2(b), we disregard any non-constitutional "error, defect, irregularity, or variance that does not affect [the defendant's] substantial rights." TEX. R. APP. P. 44.2(b).

We need not decide whether the trial court erred in admitting the 911 call over appellant's hearsay objection because any such error was harmless under Rule 44.2(b). At a revocation hearing, the State must prove the defendant violated at least one of the terms and conditions of community supervision by a preponderance of the evidence. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). One sufficient ground will support the trial court's order revoking community supervision. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009). To prevail on appeal, an appellant must successfully challenge all findings that support the revocation order. *Guerrero v. State*, 554 S.W.3d 268, 274 (Tex. App.—Houston [14th Dist.] 2018, no pet.). When

the trial court finds multiple violations, we will affirm a revocation order if the State proved any one of them by a preponderance of the evidence. *See Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd); *see also Smith*, 286 S.W.3d at 342.

Here, appellant does not challenge every possible ground supporting the trial court's judgment. The trial court's judgment reflects the trial court's finding that the following allegations were true: (A)(1) that appellant possessed a firearm (A)(2) that appellant committed aggravated assault; (D) that appellant failed to report to his probation officer from February 2020 to March 2021; (N) that appellant failed to submit a urine sample on January 31, 2020; (R) that appellant filed to participate in an anger management program; (T) that appellant failed to participate in an IOP counseling program; and (2) that appellant left the January 31, 2020 court review after being asked to submit a urine sample. Appellant's sole issue on appeal—that the trial court erred in admitting hearsay evidence—relates only to allegations (A)(1) and (A)(2). Even if we were to conclude that the trial court erred in admitting that evidence, the trial court's judgment would still be supported by its findings as to the remaining alleged violations. *See Guerrero*, 554 S.W.3d at 274; *Leach*, 170 S.W.3d at 672.

Appellant argues that he was harmed because if the State failed to prove the allegations under paragraphs (A)(1) and (A)(2), the remaining "technical violations" would have likely resulted in a lesser sentence. We see nothing in the record to

support appellant's argument. First, the trial court did not (and could not) sentence appellant for violating the terms of his community supervision. Rather, appellant's punishment was assessed for the assault–family violence that occurred in 2016. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.755(a)(1) (providing that upon revocation of community supervision, the trial court may "proceed to dispose of the case as if there had been no community supervision"). As a term of appellant's plea bargain, he was admonished that if he violates the terms of his community supervision, the trial court may proceed to adjudicate his guilt, at which point "the full range of punishment is open to the Court." The trial court heard the evidence, including punishment mitigation evidence from appellant, and assessed the maximum sentence without stating the basis of its sentencing decision. In the absence of a clear showing to the contrary, we presume the trial court acted properly and considered the evidence presented and the full range of punishment. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

We conclude that any error in admitting the 911 call was harmless and overrule appellant's sole issue.

On our own review, we note that the judgment adjudicating guilt contains a typographical error. In the portion of the judgment listing the trial court's findings, it states: "While on deferred adjudication community supervision, Defendant violated the conditions of community supervision, as set out in the State's AMENDED Motion to Adjudicate Guilt, as follows: A1, A2, D, N, R, I, & 2." The

–10–

State's amended motion did not include paragraph (I) as a condition that had been violated. At the October 29, 2021 hearing, the trial court orally pronounced its finding of true to the above paragraphs, which included paragraph (T) rather than paragraph (I). Additionally, the other violations are listed in alphabetical order, which further indicates a scrivener's error in the judgment that referenced (I) as opposed to (T).

This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); *accord Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Neither party raised this issue, but we have a duty to modify the judgment to make the record speak the truth, "and such duty is not dependent upon a request by either party." *See Asberry*, 813 S.W.2d at 531. On our own motion, we modify the judgment adjudicating guilt to remove paragraph (I) from the list of violations and replace it with paragraph (T).

As modified, we affirm the trial court's judgment.


/Bonnie Lee Goldstein//
210964f.u05                BONNIE LEE GOLDSTEIN
Do Not Publish           JUSTICE
Tex. R. App. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

DONNIE CHRISTOPHER
JOHNSON, Appellant

No. 05-21-00964-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1671543.
Opinion delivered by Justice
Goldstein. Justices Reichek and
Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

In the Judgment Adjudicating Guilt, after the words "as set out in the
State's AMENDED motion to Adjudicate Guilt, as follows[,]" we
**REMOVE** the letter "I" from the list of referenced paragraphs and
replace it with the letter "T."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 16th day of May, 2023.