

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00198-CR

———————————————

JOHN FRANKLIN SLY, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1754902

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury convicted John Franklin Sly of possession of more than four grams but less than 200 grams of a controlled substance, namely methamphetamine. Sly has appealed from his conviction, arguing in two issues that the trial court abused its discretion by (1) overruling his hearsay objection and allowing a police officer to testify about an alert that led to Sly's detention and arrest and (2) denying his mistrial motion after another police officer testified that he had heard that Sly was selling narcotics out of a local apartment complex. We will affirm.

## Background

On November 7, 2022, White Settlement Police Officer Samuel Brown received a notification from "Flock" about a vehicle that had entered the town of White Settlement.[1] Officer Brown explained that Flock is "a private company that we contract with[,] and it's basically a license[-]plate[-]reader system" that "sends notifications to our officers" about such things as warrants attached to particular license-plate numbers; "if the vehicle's stolen"; or "[i]f there's any other type of hit" through the system. The "Flock hit" to which Officer Brown testified alerted police "that a stolen silver[-]in[-]color Kia Rio had entered the city. It was eastbound on

---

[1]At trial, the trial court overruled Sly's hearsay objection and granted him a running objection concerning the Flock system. Sly bases his first issue on the trial court's ruling.

2

White Settlement Road from 820." The hit also provided the Kia's license-plate number.

After confirming through the "TCIC, NCIC system"[2] available in Officer Brown's patrol car that the Kia had been reported stolen, he drove to the area indicated by the Flock notification and began searching. Within ten minutes, Officer Brown found the Kia parked in a home's driveway and communicated by radio to other on-duty officers that he "was sitting on a car that was stolen," meaning that he was waiting for someone to start driving it and that he would need backup assistance.

A man who turned out to be Sly soon backed the Kia out of the driveway, at which point Officer Brown was joined by Sergeant Brad Bukowski,[3] who had responded to Officer Brown's radio communication. After they initiated the stop, Officer L.V. Benningfield joined them. At this point, according to Officer Brown, he was detaining Sly to investigate a possible offense and not making an arrest unless and until he determined that Sly was driving a car still being reported as stolen.

---

[2]"NCIC stands for the National Crime Information Center system; TCIC stands for the Texas Crime Information Center system." *Ellis v. State*, 535 S.W.3d 209, 211 n.1 (Tex. App.—Fort Worth 2017, pet. ref'd). The Federal Bureau of Investigation and the Texas Department of Public Safety maintain the NCIC and TCIC databases, respectively. *Id.* at 211.

[3]Sergeant Bukowski had made Lieutenant by the time of trial.

Officer Brown patted Sly down before placing him in the patrol car to await further confirmation that the Kia was stolen.[4] During the pat-down search, a clear plastic bag with a white crystalline substance fell out of Sly's pants, as Officer Brown's later review of dash-cam video made clear.[5] Upon spotting the baggie on the ground some minutes after the pat-down, from his training and experience Officer Brown believed that it contained methamphetamine, which a positive field test confirmed. Sly was charged with possession of more than four grams but less than 200 grams of a controlled substance—methamphetamine—enhanced by a prior final felony conviction.

At trial, Sly called Officer Benningfield as a witness and elicited an admission that he had been "trying to get something on" Sly for two years and that he had had "prior encounters" with Sly. Responding to the State's follow-up asking why he was interested in Sly, Officer Benningfield explained, "So we'[d] heard that Mr. Sly was selling narcotics out of Skylining Apartments." Sly objected "on the grounds of

---

[4]To ensure that the vehicle was still being reported as stolen, Officer Brown testified to a practice of "look[ing] at the VIN and . . . provid[ing] that to our dispatchers," who then "call the originating agency, which [here was] Fort Worth," to "check and see if it was still stolen in their system as well."

[5]No one actually saw the baggie fall out of Sly's pants, but the dash-cam video that was played for the jury shows that it did.

hearsay." The trial court sustained that objection and instructed the jury to disregard the answer but denied Sly's request for a mistrial.[6]

A jury found Sly guilty of the offense as charged in the indictment, found the enhancement paragraph to be true, and assessed his punishment at 30 years' confinement and a $3,000 fine. The trial court sentenced Sly accordingly, and he timely appealed.

## Issue One: Evidentiary Ruling

Sly first complains that the trial court abused its discretion by overruling his objection to Officer Brown's testimony about the Flock system, arguing that it was hearsay—an out-of-court statement offered to prove the truth of the matter asserted—that did not fall under either the business-records or public-records exception. *See* Tex. R. Evid. 801(d) (defining hearsay); 803(6), (8) (exceptions).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Under that standard, we will uphold the trial court's decision if it was within the "zone of reasonable disagreement." *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

---

[6]That denial is the subject of Sly's second issue on appeal.

A police officer "may describe statements made by others for the purposes of showing why the defendant became a suspect and to explain the events and circumstances leading to the defendant's arrest." *Lacaze v. State*, 346 S.W.3d 113, 121 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (first citing *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); and then citing *Reed v. State*, 794 S.W.2d 806, 809 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd)); *see Dinkins*, 894 S.W.2d at 347 ("An extrajudicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay."). This makes sense: "an arresting officer should not be put in the false position of seeming just to have happened upon the scene[;] he should be allowed some explanation of his presence and conduct." *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989); *see Lopez v. State*, 820 S.W.2d 898, 900 (Tex. App.— Houston [1st Dist.] 1991, no pet.) (noting that, in response to defendant's hearsay objection to a deputy's testimony that a dispatcher had checked a license plate and reported the truck as stolen, the State "stated that it was offering the evidence not for its truth, but only to show the reason [Deputy] Key was investigating" and that "[i]f not offered for its truth, the evidence was not hearsay").

Here, Officer Brown's testimony about the Flock hit was not offered as proof that the Kia was stolen—indeed, Sly was not arrested or tried for automobile theft. Instead, the Flock-related testimony explained why Officer Brown started looking for the Kia, an explanation that the law allows. Although Sly contends that this testimony

6

left the jury with the "false impression that [he] possibly stole this vehicle," thereby "creating an impression in their minds that he was a criminal before they even heard evidence of the actual crime alleged in the indictment," we agree with the State that Officer Brown's testimony and the jury instructions sufficed to dispel any such "impressions."[7]

The State elicited the following from Officer Brown:

> Q. But you're not here to tell the jury that you know for a fact that he did steal that car, you're not here to say that he knew it was stolen or any of that?
>
> A. Correct, there's due process.
>
> Q. Okay. And we're not here to determine that fact about the vehicle today?
>
> A. Correct.

The trial court instructed the jury that Sly had been charged with the offense of possession of methamphetamine and included typical extraneous-offense instructions—which were generic and not tied to anything about a stolen car—telling the jury that it could not consider "evidence of extraneous crimes or bad acts other than the ones charged in the indictment in this case" unless it found and believed "beyond a reasonable doubt that the defendant committed such other crimes or bad acts, if any were committed." Sly points to nothing in the State's evidence or

---

[7]We do not of course mean to suggest that vague argument about "impressions" can substitute for a defendant's obligation to establish that nonconstitutional error affected his substantial rights. *See* Tex. R. App. P. 44.2(b).

argument in which the State painted Sly as a car thief; to the contrary, the State took pains to describe the Flock hit and its aftermath as nothing more than explaining how Officer Brown came to be looking for the Kia.

We overrule Sly's first issue.

## Issue Two: Mistrial Ruling

Sly next complains about the trial court's denying his mistrial motion following Officer Benningfield's testimony about Sly's rumored drug dealing from the Skylining Apartments.

We review the denial of a motion for mistrial for an abuse of discretion, and we must uphold the ruling if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). A mistrial is appropriate only in extreme circumstances for a narrow class of prejudicial and incurable errors. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). We balance three factors in reviewing whether a mistrial was warranted: (1) the misconduct's severity (the magnitude of the testimony's prejudicial effect); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007).

Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App.

8

2000) (holding that a prompt instruction to disregard, coupled with the case's circumstances, may render an error harmless). This is because a jury is presumed to follow an instruction to disregard unless something in the record suggests that it could not follow the instruction. *Coble*, 330 S.W.3d at 292–93.

Here, after calling Officer Benningfield as a witness, Sly injected the idea that White Settlement police were essentially out to catch him in some criminal activity. Although the State understandably then asked Officer Benningfield why that might be, the trial court responded appropriately to his hearsay answer by sustaining Sly's objection and instructing the jury to disregard the answer.[8] Sly has not pointed us to anything in the record suggesting that the jury could not or did not follow the trial court's instruction.

Nor, contrary to Sly's position, did the inadmissible hearsay convert a colorable defense—no fingerprints or DNA linked Sly to the bag of drugs, and the bag was not discovered during the pat-down—into a slam-dunk certainty of conviction. Sly downplays the video evidence of the bag's falling from his pants leg onto the pavement during the pat-down, a visual that existed independently from anything

---

[8]Before Officer Benningfield mentioned the drug-dealing rumor, the State first asked him about the prior encounters with Sly: "[T]hey've brought up how you made these statements about wanting to arrest him, basically. What was that about? Why did you have those beliefs?" The trial court overruled Sly's objection based on prejudice and relevance grounds, but Sly does not ascribe error to that ruling except to argue that despite his objection, the trial court "let Bennington [sic] answer" and "[i]ncurable harm ensued." The State's "why" question did not in and of itself call for a hearsay response.

Officer Benningfield said and from which the jury could reasonably have found that Sly was guilty of the charged offense.[9] In light of the video and Officer Brown's testimony about it, we cannot conclude that a single remark about Sly's rumored drug dealing made it a certainty that the jury would convict him of possession.

Even if we assume that the State deliberately elicited hearsay from Officer Benningfield, Sly has not shown an abuse of discretion in the trial court's declining to declare a mistrial. *See Taylor v. State*, No. 02-16-00299-CR, 2017 WL 5894923, at *2–3 (Tex. App.—Fort Worth Nov. 30, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that prosecutor acted deliberately in eliciting improper testimony through a leading question but affirming judgment of conviction because "nothing in the record suggests the jury failed to follow the trial court's instruction to disregard").

We overrule Sly's second issue.

### Conclusion

Having overruled both of Sly's issues, we affirm the judgment below.

---

[9]Sly describes the video as showing only "the baggie in question in close proximity to [his] shoe" and not its actually falling out of his pants, but in our view the connection between Sly and the baggie is clear.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 23, 2024