Opinion filed March 14, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00064-CR

_____

## MISAEL MARQUEZ HERNANDEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-18-2126-CR**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Misael Marquez Hernandez, of the first-degree felony offense of murder. *See* TEX. PENAL CODE ANN. § 19.02(b), (c) (West Supp. 2023). The jury assessed Appellant's punishment at confinement for a term of sixty years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) and a fine of $2,500. In two issues, Appellant asserts that the trial court erroneously denied his request for a charge on a lesser-included offense and

erroneously admitted what he contends were highly prejudicial photographs during punishment. Finding no error, we affirm.

*Factual Background*

Jacob Escobedo was discovered dead outside of his relative's[1] home on the morning of August 11, 2018, after a night of drinking there with family members. Natividad Cerda Montalvo, Escobedo's uncle and employer, called 9-1-1 after observing injuries from gunshot wounds, and no signs of life.

First responders found Escobedo lying on his back next to the driver's side of Rodrigo Cerda Montalvo's[2] white pickup, "cold to the touch and stiff." Deputies and investigators with the Ector County Sheriff's Office collected four nine-millimeter shell casings and learned that Appellant—Escobedo's cousin, roommate, and co-worker—was the last person awake with Escobedo that night. Appellant had had his handgun with him that evening and had asked Natividad to buy him ammunition before going to Rodrigo's house.

Appellant was taken into custody later that day at his ex-girlfriend's mobile home with a nine-millimeter handgun in his possession. According to Appellant, he and Escobedo were sitting in Rodrigo's pickup around 3:00 a.m. just before Escobedo "got aggressive" and Appellant shot him. Appellant was in the front passenger's seat, and Escobedo was sitting in the back behind the driver's seat. When they began arguing, Escobedo hit Appellant on the left side of his head. Escobedo exited the pickup and stood outside the open driver's side window. Appellant claimed that Escobedo threw beer at him and said he could beat him up, so Appellant grabbed his gun, and shot Escobedo in the chest. He immediately got

---

[1]Despite no discernible familial relation to Rodrigo Cerda Montalvo, the homeowner of the home where Escobedo's body was found, Appellant described Rodrigo Cerda Montalvo as his and Escobedo's uncle.

[2]Because Natividad and Rodrigo Cerda Montalvo (now deceased) shared a last name, we will refer to them by their first names.

out of the pickup, walked over to Escobedo as he moaned on the ground, and shot him three more times. Appellant then fled on foot to his ex-girlfriend's workplace.

Appellant initially denied that the gun was his, but he later admitted that he bought it. He told police that he felt "forced" to shoot Escobedo and maintained his self-defense theory at trial. Appellant also requested a lesser-included-offense charge for manslaughter, which the trial court denied. The jury found Appellant guilty of murder.

At the punishment phase, Appellant testified that he was "scared," "frightened," and felt that he had no choice. He also admitted that he lost control and was "not thinking clearly." On cross-examination, Appellant told the jury that he only owned one gun—the handgun he used to shoot Escobedo, and that he liked guns, but "[doesn't] know much about them." The trial court admitted, over Appellant's objection, photographs from Appellant's Facebook page and cell phone of him posing with various firearms. The jury rejected Appellant's sudden-passion argument, and assessed punishment at confinement for a term of sixty years in TDCJ and a $2,500 fine.

*Analysis*

*Jury Charge: Lesser-Included Offense Charge*

Appellant argues in his first issue that the trial court erroneously denied his requested charge for the lesser-included offense of manslaughter. At the outset, we note that Appellant asserts that, because he was "under the influence of sudden passion arising from adequate cause," the jury should have been permitted to find him guilty only of manslaughter. However, as the State correctly points out, in 1993 the Legislature moved the issue of sudden passion from the guilt phase of trial to the punishment phase. *See Wooten v. State*, 400 S.W.3d 601, 604–05 (Tex. Crim. App. 2013) (citing Acts 1993, 73rd Leg., ch. 900, § 1.01, p. 3613, eff. Sept. 1, 1994; *Moore v. State*, 969 S.W.2d 4, 8 n.1 (Tex. Crim. App. 1998) (discussing the

3

legislative change to move the issue of sudden passion from the guilt/innocence phase of the trial to the punishment phase)).  Therefore, a defendant's claim of sudden passion during punishment would have no bearing on whether that defendant is entitled to a charge on a lesser-included offense.

Under the current statutory scheme as applied to Appellant's case, we hold that Appellant was not entitled to a charge on the lesser-included offense of manslaughter.  An offense is a lesser included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the charged offense; (2) it differs from the charged offense only in that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the charged offense only in that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the charged offense or an otherwise included offense.  TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).

Appellate courts use a two-step analysis to determine if a defendant is entitled to a charge on a lesser-offense.  *Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018).  "First, we compare the statutory elements of the alleged lesser offense and the statutory elements and any descriptive averments in the indictment." *Id.* at 670–71 (citing *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016)). Under this first step of the analysis, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged.  *Bullock*, 509 S.W.3d at 924.  Second, there must be some evidence in the record establishing that, if the defendant is guilty, he is guilty only of the lesser offense.  *Wade v. State*, 663 S.W.3d 175, 181 (Tex. Crim. App. 2022).  "In other words, the evidence must establish that the lesser-included offense provides the jury with 'a valid, rational alternative to the charged offense.'"  *Id.* (quoting *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007)).  "[I]f more than a scintilla of evidence, from any source, raises the issue that

the defendant was guilty only of the lesser offense, then the defendant is entitled to an instruction on the lesser offense." *Id.* Where, as here, the jury is charged on alternate theories, the second prong "is satisfied only if 'there is evidence which, if believed, refutes or negates every theory which elevates the offense from the lesser to the greater.'" *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023) (quoting *Ritcherson*, 568 S.W.3d at 671).

As a matter of law, manslaughter is a lesser-included offense of murder. *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017) (citing *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012)). As such, the only issue for our consideration is the second prong, whether there was any evidence presented at trial from which a rational jury could have found that Appellant is guilty only of the lesser-included offense of manslaughter. *See Ransier*, 670 S.W.3d at 650.

The difference between murder and manslaughter is the culpable mental state, intent versus recklessness. *Cavazos*, 382 S.W.3d at 384; *compare* PENAL § 19.04(a) (stating that a person commits manslaughter if he recklessly causes the death of an individual) *with id.* § 19.02(b)(1) (stating that a person commits murder if he intentionally or knowingly causes the death of an individual) *and id.* § 19.02(b)(2) (stating that person commits murder if he intends to cause serious bodily injury and commits act clearly dangerous to human life that causes death of individual). A person commits manslaughter by recklessly causing the death of a person, which is acting with a conscious disregard of a substantial and unjustifiable risk regarding circumstances or results surrounding the conduct. *Cavazos*, 382 S.W.3d at 384; *see* PENAL § 19.04(a); § 6.03(c) (West 2021).

For Appellant to have been entitled to the lesser-included-offense charge on manslaughter, the evidence would have had to show that manslaughter was a "valid, rational alternative" to murder. *See Cavazos*, 382 S.W.3d at 385 (quoting *Hall*, 225 S.W.3d at 536). Here, there was no evidence directly germane to recklessness.

Appellant admitted to shooting Escobedo four separate times—once from inside the pickup while Escobedo was outside, then three more times when Escobedo was lying on the ground.

Accordingly, "[p]ulling out a gun, pointing it at someone, pulling the trigger" four times, leaving the scene, and later telling law enforcement that he was "forced" to shoot Escobedo does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots. *See Cavazos*, 382 S.W.3d at 385. The evidence in this case does not show that Appellant merely acted recklessly and does not rise to the level that would allow a rational jury to find that, if Appellant is guilty, he is guilty only of manslaughter. *Id.* Because there was no evidence that raised the issue of the lesser-included offense of manslaughter, the trial court did not err when it refused to submit that lesser-included offense to the jury. We overrule Appellant's first issue.

*Admissibility of Photographs*

In his second issue, Appellant asserts that the trial court erred when it admitted, during the punishment phase, photographs of him holding firearms because the probative value thereof was substantially outweighed by their prejudicial effect. The State responds that Appellant failed to preserve his complaint for appellate review, and even if he had, the trial court did not abuse its discretion in admitting the photographs. We first address whether Appellant preserved error.

Rule 33.1 of the Texas Rules of Appellant Procedure requires a timely, specific objection and a ruling by the trial court to preserve a complaint for appellate review. TEX. R. APP. P. 33.1(a). To be timely, a complaint must be made as soon as the grounds for complaint are or should be apparent. *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). "To be sufficiently specific, an objection need not employ hypertechnical or formalistic words or phrases." *Ex parte Nuncio*, 662 S.W.3d 903, 914 (Tex. Crim. App. 2022) (internal punctuation and quotation

6

marks omitted).  To avoid forfeiting a complaint on appeal, a party must simply let the trial court know what he wants and why he thinks he is entitled to it, and the party must do so clearly enough for the trial court to understand him at the time when the judge is in a proper position to do something about it.  *Id.*

Here, Appellant made "general or imprecise objection[s]" to the admission of the photographs prior to the State laying the foundation therefor, and it was not until the State was about to publish them to the jury that he objected under Rule 403 of the Texas Rules of Evidence.  *See Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006).  However, we note that we may not engage in the "parsing of [A]ppellant's objections," because it "is the kind of hyper-technical analysis" that the Court of Criminal Appeals has repeatedly rejected.  *See Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013).  Appellant gave the trial court the opportunity to rule on his specific complaint prior to the jury seeing the photographs. *See Aguilar v. State*, 26 S.W.3d 901, 906 (Tex. Crim. App. 2000).  We thus treat Appellant's objection under Rule 403 prior to the jury seeing the photographs as timely and sufficiently specific, and we will address the merits of his contention. *See id.*

Whether to admit evidence at trial is a preliminary question to be decided by the trial court.  TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012).  We review a trial court's admission or exclusion of evidence for an abuse of discretion.  *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *see Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010) (The admission of photographs over an objection is within the sound discretion of the trial court.).  The trial court's decision will be upheld as long as it was within the "zone of reasonable disagreement."  *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).  We will not reverse a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in

the record, and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016).

Pursuant to Article 37.07, Section 3(a), of the Texas Code of Criminal Procedure, evidence may be offered "as to any matter the court deems relevant to sentencing," including "the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and . . . any other evidence of an extraneous crime or bad act." CRIM. PROC. art. 37.07 § 3(a)(1) (West Supp. 2023). Deciding what punishment to assess is a normative process that is not intrinsically fact bound. *Beham*, 559 S.W.3d at 478. However, the concept of relevance as set out in Rule 401 plays a role in the admissibility determination of punishment evidence. *Id.* Evidence is relevant to sentencing within the meaning of the statute "if it is 'helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'" *Id.* at 479 (quoting *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007)).

"[D]etermining what evidence should be admitted at the punishment phase of a non-capital felony offense is a function of policy rather than a question of logical relevance." *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002). Some of the policy considerations include, but are not limited to, giving complete information for the jury to tailor an appropriate sentence for a defendant; the policy of optional completeness; and admitting the truth in sentencing. *Id.* at 233–34. The trial court has wide discretion to deem virtually any matter relevant to a proper sentence. *Beham*, 559 S.W.3d at 480. It abuses its discretion "only when the reviewing court can say with confidence that by no reasonable perception of common experience does the proffered evidence inform a legitimate area of normative inquiry." *Id.* (internal quotation marks omitted).

Rule 403 of the Texas Rules of Evidence provides that relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403. So even if a court determines that evidence is relevant and admissible for non-conformity purposes, Rule 403 may nevertheless preclude its admission if the trial court determines that the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403; *Perkins v. State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Hall v. State*, 663 S.W.3d 15, 34 (Tex. Crim. App. 2021).

In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990)). When conducting a Rule 403 analysis, the trial court must balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). "[T]hese factors may well blend together in practice." *Id.* Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403

objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.*

The first *Gigliobianco* factor focuses on the inherent probative force of the proffered evidence. As the Court of Criminal Appeals explained in *Gigliobianco*, "probative value" is more than just relevance. 210 S.W.3d at 641. It refers to how strongly an item of evidence "serves to make more or less probable the existence of a fact of consequence to the litigation[,] coupled with the proponent's need for that item of evidence." *Id.* The second *Gigliobianco* factor focuses on the State's need for the evidence.

In Appellant's case, the complained-of photographs were at least normatively relevant to and probative of his character and "proclivity to commit future criminal acts." *See Beham*, 559 S.W.3d at 483. "This is especially true when, as here, [Appellant] is being sentenced for a violent, aggravated felony" in which he shot and killed the victim. *See id*. The photographs were admitted on the final day of trial in response to Appellant's testimony that the only gun that he owned was the one that he used to shoot and kill Escobedo, and that he did not know much about guns. In the photographs, Appellant willingly displayed himself posing with several firearms, including a handgun. Evidence of Appellant handling many different firearms allowed the jurors to decide for themselves whether Appellant's testimony was truthful and "emanate[d] from nothing more than what [Appellant] has himself done." *See Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995). Further, the photographs fulfilled the State's purpose of rebutting Appellant's testimony that he was unfamiliar with firearms.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. The third factor focuses on the tendency of the evidence to suggest a decision on an improper basis. The fourth factor focuses on the potential of the proffered evidence to confuse or distract the jury from the main issues. The

fifth factor focuses on the potential of the proffered evidence to mislead the jury. Finally, the sixth factor focuses on the time needed to present the proffered evidence and whether it is cumulative of other evidence.

The presentation of the photographic evidence took approximately twelve minutes, and it was not cumulative of other evidence. The photographs were not misleading—they simply portrayed Appellant holding a variety of firearms. Additionally, the photographs depicted events that Appellant posed for, and they rebutted Appellant's testimony that he was not familiar with firearms. We conclude that the trial court did not abuse its discretion by admitting the photographs during the punishment phase of trial. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


March 14, 2024

Panel consists of: Bailey, C.J.,
Williams, J., and Wright, S.C.J.[3]

Trotter, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.