

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00143-CR

_____

VALDEMAR FLORES IV, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1626097

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

## I. INTRODUCTION

In the indictment, the State alleged in Count 1 that Appellant Valdemar Flores IV intentionally, knowingly, or recklessly caused bodily injury to A.K.F.[1] by impeding her normal breathing or circulation of blood by applying pressure to her throat or neck by squeezing her neck with his hands. The State alleged in Count 2 that during a period of 12 months or less in duration, Flores engaged in conduct that constituted assault bodily injury to a particular family member on January 3, 2020, and January 4, 2020. A jury acquitted Flores on Count 1, impeding breath or circulation, and convicted him on Count 2, continuous violence against the family. The trial court assessed punishment at fifteen years' confinement.

In five issues, Flores argues that the trial court erred by admitting (1) State's Exhibit 32, and (2) State's Exhibits 42 and 43 as evidence, (3) allowing surrogate testimony about an autopsy in violation of his rights under the Sixth Amendment of the United States Constitution, (4) failing to admit defense evidence of the nature of his relationship with A.K.F., and (5) failing to admit evidence through the excited utterance exception. We hold that the trial court did not abuse its discretion by admitting the complained of State's exhibits or by refusing to admit Flores's requested

---

[1]We use initials to protect the complainant's identity. *See* 2nd Tex. App. (Fort Worth) Loc.R.7.

2

evidence. The trial court also did not allow surrogate testimony into evidence. We affirm the trial court's judgment.

## II. BACKGROUND

Flores does not challenge the sufficiency of the evidence. Accordingly, we will summarize the underlying facts only briefly.

Flores and A.K.F. were married on July 31, 2017, and together they have one son, N.F. The allegations in the indictment are from an altercation between Flores and A.K.F. that occurred on January 3 and January 4, 2020. According to A.K.F., Flores also assaulted her in January 2019 and in May 2019.

A.K.F. testified that on January 3 she was asleep on the couch when Flores awakened her by yelling and screaming at her. Flores was agitated that she had not picked up a prescription for N.F. A.K.F. stated that Flores started strangling her and that she felt intense pain in her neck and that she also felt disoriented. A.K.F. explained that she could not breathe and that she lost consciousness for a moment. After she came to, she went to pick up the prescription. Sometime after A.K.F. returned home, Flores left the home. A.K.F. went to sleep in the guest room with N.F.

On the morning of January 4, Flores returned home, and A.K.F. testified that he became enraged when she informed him she was leaving him. According to A.K.F., Flores kicked her in the stomach, slapped her in the face, and grabbed her neck. When she tried to get away, Flores pushed her down causing her to hit her

head. Flores covered A.K.F.'s face with a pillow so that she could not breathe. A.K.F. was eventually able to get away and go to the neighbor's house for help. She reported this incident to the police and subsequently acquired a protective order against Flores.

## III. DISCUSSION

### A. ADMISSION OF STATE'S EXHIBITS

In his first issue, Flores argues that the trial court erred by admitting State's Exhibit 32 because it was not relevant and more prejudicial than probative. In his second issue, he complains that the trial court erred by admitting State's Exhibits 42 and 43 because they were not relevant and were not "nature of the relationship" evidence under Article 38.371 of the Texas Code of Criminal Procedure.

### 1. Standard of Review

We review a trial court's ruling whether to admit or exclude evidence for an abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). Appellate courts will not reverse the trial court's ruling except where there has been a clear abuse of discretion falling outside the zone of reasonable disagreement. *Id.*

### 2. Legal Principles

Evidence is relevant if it has any tendency to make a fact of consequence "more or less probable than it would be without the evidence." Tex. R. Evid. 401(a). "To meet the threshold requirement of relevance, evidence need only have a tendency to make the ultimate fact more or less likely than it would be without; it need not

4

prove the point by itself." *Beham v. State*, 559 S.W.3d 474, 482 (Tex. Crim. App. 2018).

Article 38.371 of the Texas Code of Criminal Procedure is applicable to a proceeding in the prosecution of a defendant for an offense for which the alleged victim is in a family relationship with the defendant. Tex. Code Crim. Proc. Ann. art. 38.371(a). Article 38.371 provides that "each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." *Id.* at 38.371(b). Article 38.371 does not "permit the presentation of character evidence that would be inadmissible under the Texas Rules of Evidence or other applicable law." *Id.* at 38.371(c).

### 3. Procedural Background

Flores's first issue concerns State's Exhibit 32, a screenshot of text messages from A.K.F.'s phone. A.K.F. testified that the text messages were between her and Flores. She stated that the messages were a true and accurate depiction of her conversation with Flores, but that she could not remember the date of the conversation. Flores made a relevance objection to the admission of State's Exhibit 32. The trial court overruled the objection. A.K.F. then testified that in the text messages, she had asked Flores to stop calling her at work.

5

Flores's second issue concerns the admission of—State's Exhibits 42 and 43—business record affidavits and records from the City of Arlington Dispatch Services detailing calls on February 28, 2020, from Flores requesting a welfare check for A.K.F. and N.F. Flores objected that the exhibits were not relevant because they concerned events after January 3 and 4, 2020. The State responded that it was proffered to the trial court at the Article 38.371 hearing and goes to the nature of the relationship. The trial court overruled the objection and admitted the exhibits.

### 4. Application

Flores specifically argues in his first issue that the screenshot was not relevant because it had been altered and because there was no evidence of when the screenshot of the text messages was taken.

Flores did not object at trial that the photo had been altered. Therefore, he did not preserve this argument for review. *See* Tex. R. App. P. 33.1(a). Even if it were preserved, A.K.F. testified that the substance of the text messages from Flores had not been changed and that the photo was a true and correct depiction of the conversation with Flores. A.K.F. explained that she edited Flores's contact information in her phone to show his phone number rather than a name or description for him. She maintained that she did not edit the text messages in any way. Thus, the record does not support Flores's argument that the screenshot had been altered.

Further, the State offered the exhibit to show that Flores had called A.K.F. repeatedly at work and that she had asked him to stop doing so. The relevance of the exhibit did not depend on the date it was taken but rather on the substance of the messages—that Flores was bothering A.K.F. at work. We cannot say that the trial court abused its discretion in admitting State's Exhibit 32. *See* Tex. R. Evid. 401; *Montgomery v. State*, 810 S.W.2d 372, 375–76 (Tex. Crim. App. 1991) (op. on reh'g).

Flores also argues that the photo of the text messages was prejudicial. Flores did not object at trial that State's Exhibit 32 probative value was outweighed by its prejudicial effect. *See* Tex. R. Evid. 403. Thus, he failed to preserve this argument for review. Tex. R. App. P. 33.1(a); *Sony v. State*, 307 S.W.3d 348, 355–56 (Tex. App.—San Antonio 2009, no pet.). We overrule Flores's first issue.

Flores's defense at trial was that A.K.F. was abusive to him and suffered from mental illness. Although A.K.F. has never been diagnosed with a mental disorder, Flores reported that A.K.F. was bipolar and had schizophrenia both before and after the events on January 3 and 4.

After the altercation on January 3 and 4, 2020, A.K.F. obtained a protective order preventing Flores from contacting her. State's Exhibits 42 and 43 show that on February 28, 2020, Flores requested that law enforcement conduct a welfare check for A.K.F. and N.F. Flores reported that A.K.F. was bipolar and that he had not been in contact with her for two months.

7

Flores contends that State's Exhibits 42 and 43 are not relevant because they occurred after the events on January 3 and 4. There is nothing in Article 38.371 limiting it to evidence that occurred prior to the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.371. The exhibits were relevant to show the nature of the relationship between Flores and A.K.F. in that Flores continued to claim that A.K.F. had a mental disorder despite no evidence of any such diagnosis. *See id*; *see also Fernandez v. State*, 597 S.W.3d 546, 566 (Tex. App.—El Paso 2020, pet. ref'd).

Flores also asserts that the exhibits were inadmissible under Rule 403 of the Texas Rules of Evidence. However, Flores did not make a Rule 403 objection at trial, and therefore, did not preserve his complaint for review. Tex. R. App. P. 33.1(a); *Sony*, 307 S.W.3d at 355–56. We hold that the trial court did not abuse its discretion in admitting State's Exhibits 42 and 43. We overrule Flores's second issue.

## B. ADMISSION OF EXPERT TESTIMONY

In his third issue, Flores argues that the "trial court erred in allowing surrogate testimony about an autopsy thus violating [his] rights under the [Sixth] Amendment."[2] The State called Mary Ann Contreras[3] to testify about nonfatal strangulation. Flores's trial counsel stated, "I think it would be alright if - - if she testifies to the general effects of this in front of the jury, but as far as this particular case, I would object to

[2]We note that there was no autopsy performed in relation to the case before us.

[3]At a hearing outside the presence of the jury, the trial court found that Contreras was qualified to give testimony as an expert in strangulation. Flores's trial counsel did not object to the designation of Contreras as an expert.

8

that and I would like to limit her testimony just to her clinical experience." The trial court noted "that's where she is going because she didn't examine her at all." Trial counsel again objected to Contreras offering an opinion that she believed A.K.F. was strangled, and the trial court overruled the objection.

Contreras explained strangulation to the jury and described the symptoms a person who has been strangled experiences such as a hoarse voice, confusion, and trouble telling a story in order. According to Contreras, a lack of oxygen can cause a person to have erratic behavior and memory loss and can be mistaken for a mental health episode. Contreras reviewed A.K.F.'s medical records and opined that A.K.F. exhibited symptoms consistent with being strangled.

Flores specifically argues that Contreras was not the originator of the autopsy report and that the "surrogate testimony" given by the non-testing analyst explaining the report did not satisfy his right to confront witnesses citing *Bullcoming v. New Mexico* as authority. 564 U.S. 647, 661–62 (2011). Flores summarizes his argument by stating that Contreras reviewed the autopsy reports and gave an analysis of the findings of the report but that she did not originate the reports.

Flores did not object to Contreras's testimony based upon a violation of the Sixth Amendment right to confront witnesses. "Confrontation Clause complaints are subject to preservation requirements." *Blackwell v. State*, No. 02-24-00040-CR, 2025 WL 52115, at *2 (Tex. App.—Fort Worth Jan. 9, 2025, no pet. h.) (mem. op., not designated for publication) (citing *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim.

9

App. 2010)); *see Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. Ref'd) ("We conclude the right of confrontation is a forfeitable right—not a waivable-only right—and must be preserved by a timely and specific objection at trial."). Therefore, because Flores made no objection, he did not preserve his complaint for review.

Moreover, there was no autopsy report in this case. Contreras did not give an analysis of any report. Contreras testified about strangulation in general and the signs and symptoms of strangulation. She testified that she reviewed medical records and police body cam video and then opined that A.K.F. exhibited signs and symptoms consistent with strangulation. Contreras did not offer "surrogate testimony," but her expert opinion based on a review of existing reports and videos. Flores's trial counsel was able to extensively question Contreras on cross-examination about her reliance on those materials. Flores was not denied his right to confront witnesses under the Sixth Amendment. We overrule Flores's third issue.

## C. EXCLUSION OF FLORES'S EVIDENCE

In his fourth issue, Flores argues that the trial court erred by failing to admit his offered testimony concerning "nature of the relationship" pursuant to Article 38.371 of the Texas Code of Criminal Procedure. In his fifth issue, he asserts that the trial court erred by excluding evidence as an excited utterance exception to the hearsay rule.

### 1. Standard of Review

We review a trial court's ruling whether to admit or exclude evidence for an abuse of discretion. *Hart*, 688 S.W.3d at 891. Appellate courts will not reverse the trial court's ruling except where there has been a clear abuse of discretion falling outside the zone of reasonable disagreement. *Id.*

### 2. Legal Principles

Article 38.371 provides that "each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." Tex. Code Crim. Proc. Ann. art. 38.371(b). Article 38.371 does not "permit the presentation of character evidence that would be inadmissible under the Texas Rules of Evidence or other applicable law." *Id.* at 38.371(c).

Hearsay is an out-of-court statement that a party offers to prove the truth of the matter asserted within the statement. Tex. R. Evid. 801(d). Hearsay is generally inadmissible unless it falls within one of the enumerated exceptions. Tex. R. Evid. 802.

An "excited utterance" is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Tex. R. Evid. 803(2). Such excited utterances are an exception to the hearsay rule.

Tex. R. Evid. 803. In determining whether a hearsay statement is admissible as an excited utterance, a court considers whether

> (1) the "exciting event" [is] startling enough to evoke a truly *spontaneous* reaction from the declarant; (2) the reaction to the startling event [is] quick enough to avoid the possibility of fabrication; and (3) the resulting statement [is] sufficiently "related to" the startling event, to ensure the reliability and trustworthiness of that statement.

*McCarty v. State*, 257 S.W.3d 238, 241 (Tex. Crim. App. 2008).

In determining whether a hearsay statement is admissible as an excited utterance, a court may also consider the time elapsed and whether the statement was in response to a question. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Davis v. State*, 268 S.W.3d 683, 703 (Tex. App.—Fort Worth 2008, pet. ref'd). However, it is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception. *Zuliani*, 97 S.W.3d at 596; *Davis*, 268 S.W.3d at 703. The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" at the time of the statement. *Zuliani*, 97 S.W.3d at 596.

### 3. Procedural Background

Richard Ross, Flores's brother-in-law, testified that he was concerned about A.K.F. assaulting Flores. Ross testified that on more than one occasion he had to pick up Flores because A.K.F. was being "irate and crazy, abusive." Ross took Flores

12

to the Arlington Police Department to report the abuse, but Flores refused to file a report.

Ross testified that in December 2019, Flores and A.K.F. arrived at a Christmas party, and he went out to help them carry in N.F. and their gifts. Ross stated that he saw A.K.F. grab N.F. by his arm and "yank[] him out of the car pretty hard." The State objected to relevance, and Flores responded that it went to "th[e] nature of the relationship." The State responded that it was improper character evidence, and the trial court sustained the objection.

Ross also described an occasion where he received a call to pick up Flores, and when he arrived, Flores had blood on his shirt. Ross said he had asked Flores what had happened, and Flores had finally told him. The State objected as to hearsay, and Flores's trial counsel attempted to clarify by asking Ross if it seemed like it was close in time to the events. Ross responded "yes," and trial counsel then asked if it appeared Flores was in an excited state or in a shocked state. Ross said Flores appeared to be in shock and still under the stress of what had happened. Trial counsel sought to offer Flores's statement to Ross about what had happened that day as an excited utterance. The trial court sustained the State's hearsay objection and excluded the testimony. Ross testified that after Flores told him what had happened, he had driven Flores to the Arlington Police Department because he had wanted the event to be documented. Flores, however, had refused to get out of the car to file a report.

## 4. Application

Flores argues that Ross's testimony that A.K.F. had yanked N.F. out of the car was permissible under Article 38.371 because it showed the nature of the relationship between Flores and A.K.F. Article 38.371 permits evidence regarding the nature of the relationship between the actor and the alleged victim. Tex. Code Crim. Proc. Ann. art. 38.371(b). The excluded testimony showed the relationship between A.K.F. and N.F.—not A.K.F. and Flores. Therefore, the evidence was not admissible under Article 38.371(b). *Id.* at 38.371(b)(c). Even if it were admissible, Flores was able to introduce evidence as to the nature of his relationship with A.K.F. when Ross testified that A.K.F. had been abusive to Flores and that she acted in an "irate and crazy manner" on at least two occasions. Ross also testified that there were "three or four" times that involved physical violence. Any error in excluding the evidence did not affect Flores's substantial rights. *See* Tex. R. App. P. 44.2(b). We overrule Flores's fourth issue.

Flores argues that his statement to Ross describing the events that caused Ross to pick him up and take him to the police department were admissible as an excited utterance because the statements were made close in time to the events, while he was in shock, and while he was under the stress of what had happened. However, the record does not show the amount of time that elapsed between when the events occurred and when Ross arrived at Flores's house. Ross only testified that when Flores got in the car it seemed as though it was close in time to the events. It is not

clear that the reaction to the startling event was quick enough to avoid the possibility of fabrication. *See McCarty*, 257 S.W.3d at 241. Even if it was close in time, Flores did not spontaneously tell Ross what had happened but responded to Ross's question about what had happened. Thus, the record does not show that the statement was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. *See Zuliani*, 97 S.W.3d at 596.

Moreover, the exclusion of this testimony was not harmful because Ross testified that as a result of Flores's statement, he had taken Flores to the Arlington Police Department to file a report. Ross testified that he had told Flores that "next time you're going to end up dead" if Flores did not report the incident. The jury heard evidence that A.K.F. had abused Flores and that Ross had then encouraged Flores to file a report with the police. Therefore, we conclude that any error in excluding the statement itself did not affect Flores's substantial rights. *See* Tex. R. App. P. 44.2(b). We overrule Flores's fifth issue.

## IV. CONCLUSION

Having overruled Flores's five issues on appeal, we affirm the trial court's judgment.

/s/ Brian Walker
Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 19, 2025

15